

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| **IN RE DONNA RAE GIBBONS-MARKEY** § | |
| **DEBTOR.** § | |
| _____ § | **Civil Action No.: SA-04-CA-231-XR** |
| **DONNA RAE GIBBONS-MARKEY** § | |
| **APPELLANT,** § | |
| **v.** § | |
| **TEXAS MEDICAL LIABILITY TRUST** § | |
| **APPELLEE** § | |

**ORDER**

On this date, this Court considered Gibbons-Markey's motion to determine attorney's fees (Docket No. 16). For the reasons discussed below, the motion is GRANTED in part and DENIED in part.  The Clerk is instructed to close this case.

**I.  Factual Background**

**A.      The Muzquiz Case and Default Judgment**

On or about August 1, 1994, Patricia Muzquiz (Muzquiz) received nasal surgery from the Appellant, Donna Gibbons-Markey, M.D. (Markey).  Muzquiz alleged she was injured from the procedure.  On April 11, 1996, as required by Texas statute, Muzquiz sent Markey written notice that a claim would be filed.   A lawsuit was later filed as *Patricia Muzquiz v. Donna Gibbons, M.D.,* Cause No. 96-CI 11065, in the Judicial District for Bexar County, Texas on August 1, 1996.  Service

of the petition allegedly occurred on August 25, 1996.

Markey never responded or answered the Muzquiz lawsuit.  On September 30, 1996, Muzquiz was awarded a default judgment in the amount of $173,200.00 for medical expenses, lost wages, and pain and suffering among other damages.  On February 21, 1997, Muzquiz filed and sent Plaintiff's First Set of Interrogatories and First Request for Production in Aid of Judgment.  On May 20, 1997, Plaintiff filed and sent, by certified mail, a Motion to Compel Markey to respond to the interrogatories.  On May 21, 1997, Markey replied, by letter, that she received the Motion to Compel but was confused claiming that she had received no prior notices of any claim or lawsuit.  Muzquiz then sent an Order to Compel Production in Aid of Judgment and Answers to Interrogatories on August 1, 1997.  The order stated that contempt proceedings would take place against Markey if she did not respond within 10 days.  Markey did not respond to the Order.

Apparently, on August 8, 1997, either Markey or Muzquiz's attorney contacted Markey's insurer, Texas Medical Liability Trust (TMLT) about Muzquiz's claim.  On August 12, 1997, Markey sent a letter to TMLT regarding Muzquiz's claim and enclosed the Order to Compel.  TMLT thereafter informed Markey that she failed to timely notify them of Muzquiz's claim and Markey failed to comply with the notice provisions of her insurance policy.

Markey then employed an attorney and filed for a Bill of Review.  She contends that she was never served with process in the Muzquiz action.  Service was supposedly effected at 9:00 a.m. on August 30, 1996, at 540 Madison Oak Drive, Suite 526, in San Antonio, Texas.  Markey asserts in an affidavit that she was not served that day and has never had an office at that address.  Her office is located at 540 Madison Oak Drive, Suite 190.  Markey eventually settled the Bill of Review with Muzquiz for $7,500 and the default judgment was set aside.

**B.      Markey Lawsuit filed against TMLT**

After the default judgment was set aside, TMLT did undertake Markey's defense and was ultimately successful in procuring a dismissal of the suit.  Subsequently, Markey demanded that TMLT reimburse her for the $7,500 Bill of Review settlement payment and the attorney's fees incurred in connection with the Bill of Review.  TMLT refused and Markey filed a lawsuit against TMLT in state court.  Soon thereafter, Markey filed Chapter 7 bankruptcy and the TMLT case was removed to the Bankruptcy Court.

**C.      The Bankruptcy Court Decision**

The Bankruptcy Court found that: (1) Markey did not receive notice of the petition in August 1996; (2) Markey received Interrogatories in Aid of Judgment in February/March of 1997 and a Motion to Compel Judgment in May of 1997;  (3) TMLT was first notified of the claim on August 8, 1997; and (4) TMLT was prejudiced by the passage of time due to Markey's delayed notification. As a matter of law the Bankruptcy Court determined that: (1) TMLT did not have an obligation to file a Bill of Review on behalf of Markey; and (2) Markey had a duty to notify TMLT upon receipt of notice of the suit.

**D.      Appeal to this Court**

This Court affirmed the bankruptcy court's decision.

**E.      Fifth Circuit**

The Fifth Circuit reversed, concluding that TMLT had not succeeded in showing that it was prejudiced during the time between Markey's discovery of the default and the time she notified TMLT so as to relieve it of the duty to seek post-judgment relief.  Because the bankruptcy court and this court did not reach the question of whether the attorney's fees expended by Markey in

3

responding to post-judgment discovery and the filing of the bill of review were reasonable, this case was remanded for further proceedings.

## II. Legal Analysis

Markey seeks $208,945.01[1] calculated as follows:

1.    $54,000 (recovery of the $7,500 settlement[2], $4,500 paid to attorney Pounds[3], and $42,000 paid to attorney Kerr[4]);

2.    18% prejudgment interest[5];

3.    $44,700 (attorney's fees paid to Rutherford attorneys during the bankruptcy case); and

4.    $42,152.10 (attorney's fees for appealing the bankruptcy decision to both this court and the Fifth Circuit).

## A.    Damages and reasonable attorney's fees expended in the Muzquiz settlement

TMLT argues that Markey has failed to adequately support her claim of $54,000.  This objection is sustained in part, and overruled in part.  Markey testified at the bankruptcy trial that she paid $7,500 to settle the Muzquiz claim.[6]  Although Markey testified that she paid attorney Pounds

---

[1]Alternatively, she seeks $171,126.98 based on an 8% interest rate.

[2]SF, Vol. 1, p. 184

[3]SF, Vol. 1 at p. 184

[4]SF, Vol. 1 at p. 184

[5]This interest rate is based upon Texas Finance Code §304.002.  The 8% interest rate is based upon Texas Finance Code §304.003.

[6]SF, Vol. 1 at p. 185

$4,500, this does not constitute evidence of reasonable and necessary attorney's fees.[7]

In Markey's appendix filed in this court, she provided an affidavit from attorney Kerr that reasonable and necessary attorney's fees were expended in securing the Muzquiz settlement. This court's review of the invoices attached to Exhibit 7 of Appellee's Appendix of Exhibits (Docket No. 7) indicates that $36,058.50 in attorney's fees were reasonably and necessarily incurred. In addition, $934.50 were expended in deposition costs. The remainder of the fees sought were incurred in a separate action Markey evidently brought against the process server.

This court concludes that the underlying damages, court costs and attorney's fees expended in settling the Muzquiz matter was $44,493 ($7,500 + $36,058.50 + $934.50).

TMLT also objects to any attorney's fees awarded because although the bankruptcy court admitted Kerr's affidavit, it made no determination as to the reasonableness of the fees requested. After the remand was received by the Fifth Circuit, this court expressly inquired of the parties whether this matter should be remanded to the bankruptcy court for a determination as to the reasonableness of the fees requested. The parties agreed that no remand to the bankruptcy court was necessary and that this court could make any such finding.[8]   Accordingly, TMLT's objection is

_____

[7]In Markey's brief filed October 12, 2006, she states that the necessity of Pounds' fees "in filing a bill of review is almost too obvious." Unfortunately for Markey, although courts can take judicial notice of certain facts, the reasonableness and necessity of attorney's fees require some evidentiary proof. Even if this Court could take judicial notice that an attorney was needed to prevail on the bill of review, there is no evidentiary support for the necessity of attorney Pounds and attorney Kerr. No itemization is provided as to what attorney actions Pounds undertook and whether they were duplicative or not from attorney Kerr's actions. *See American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 493 (5th Cir. 2004).

[8]*See* Defendant's Memorandum in Support of the District Court's Determination of Appellant's Reasonable Attorney's Fees, Docket No. 15, Pgs. 2 & 6. ("This [District] Court has jurisdiction to determine the reasonableness of Gibbons-Markey's forthcoming application for attorney's fees . . . . This [District] Court . . . is most familiar with the application of the *Johnson*

waived.

**B.      Attorney's fees paid to Rutherford attorneys during the bankruptcy case**

TMLT raises a novel argument.  This argument was not advanced at the bankruptcy trial (nor

at the initial appeal at this Court nor at the Fifth Circuit).  TMLT asserts that Tex. Civ. Prac. & Rem

Code § 38.001 and Tex. Ins. Code Art. 21.49-4 preclude any award of attorney's fees incurred during

the bankruptcy proceedings.  Tex. Civ. Prac. & Rem. Code § 38.001 states: "A person may recover

reasonable attorney's fees from an individual or corporation . . . if the claim is for: . . . an oral or

written contract."  TMLT argues that it is not an individual or a corporation, but rather is a trust

organized pursuant to Tex. Ins. Code Art. 21.49-4.  Article 21.49-4 was enacted by the Texas

Legislature and allows physicians to self-insure.  TMLT is a health care liability claim trust owned

by its physician policyholders.  It advertises itself to be the largest medical liability carrier in the

state.[9]  Despite this standing, article 21.49-4(e) states: "The Trust is not engaged in the business of

insurance under this code and other laws of this state and the provisions of any chapters or sections

of this code are declared inapplicable to a trust organized and operated under this article . . . ."

At first blush it would appear that TMLT should be required to pay attorney's fees.  Section

38.001 states that a person may recover attorney's fees from an individual or corporation.  TMLT

is not an individual.  The revisor's note to 38.001 states: "The revised law does not use 'person' in

the reference to an opposing party because the Code Construction Act definition of 'person' is

---

factors in attorney's fees requests, including the requisite specificity of time records and the
customary hourly rates charged by attorney's in the Western District, and specifically San
Antonio").

[9]See http://www.tmlt.org.

broader than the source law meaning of the term." This court did not locate any case law interpreting whether a trust may be assessed attorney's fees under section 38.001.[10]  The only related cases the court has found clearly indicate that governmental entities are not corporations for purposes of section 38.001.[11]  *See, e.g., Texas A&M v. Lawson*, 127 S.W.3d 866, 874 (Tex. App.—Austin 2004, pet. denied).

This Court concludes that TMLT has waived this argument by failing to preserve and advance it at the earlier proceedings.[12]  Alternatively, it has long been Texas law that an insuring

---

[10]Plaintiff cites to *Ray Malooly Trust v. Juhl* for the proposition that a plaintiff may sue a trust on a breach of contract claim and may recover attorney's fees from the trust under section 38.001 in addition to contract damages. 186 S.W.3d 568, 569 (Tex. 2006).  In *Juhl*, the Texas Supreme Court noted that a trust is not a legal entity and that the Texas Property Code gives the trustee the power to compromise, contest, arbitrate, or settle claims against a trust.  *Id.* at 570.  Since the trustee is the person holding the property in trust, a judgment against that property must be brought against the person who holds it.  *Id.*  The holding in *Juhl* related to the capacity of a trust to be sued: "if a legal representative makes a general appearance in that capacity, the judgment is treated as if it were against the legal entity, even if the latter is never named."  *Id.*

[11]Since Tex. Ins. Code Art. 21.49-4(e) presumably exempts TMLT from liability under Tex. Ins. Code Chapter 541 (formerly Art. 21.21)(Deceptive Practices in the Business of Insurance) and Tex. Ins. Code Chapter 542 (formerly Art. 21.21-2)(Unfair Claim Settlement Practices Act), TMLT is not entitled to the section 38.006 exemption from section 38.001.  *See* TEX. CIV. PRAC. & REM. CODE § 38.006; *See Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 3 (Tex. 2000) (section 38.006 denies attorney's fees under section 38.001 only if attorney's fees are available to Plaintiff under another statutory scheme)(answer to certified question from Fifth Circuit).

[12]In *Juhl*, the Texas Supreme Court denied the petition for review.  186 S.W.3d at 570. The lower appellate court affirmed a trial court judgment against the trust for $222,000 in lost profits plus attorneys fees; however, the lower appellate court only addressed whether the trust had the capacity to be sued in its own name, not whether the trust was liable for attorney's fees under section 38.001.  *See Ray Malooly Trust v. Juhl*, No. 08-02-00512-CV, 2004 WL 1375542, *1 (Tex. App.—El Paso 2004, pet. denied).  It appears that the Ray Malooly Trust failed to argue on appeal that it was not liable for attorney's fees under section 38.001.  Based on *Juhl*, this Court concludes that TMLT can waive its objection to an award of attorney's fees under section 38.001.

entity is liable for the attorney's fees incurred by an insured in a breach of contract action.  *See*

*American Home Assur. Co. v. United Space Alliance, LLC*, 378 F. 3d 482, 492-93 (5th Cir. 2004).

Alternatively, actions against a trust should be filed against the trustee.[13]  Had that been done in this

case, then the action against the trustees of TMLT would constitute an action against an individual.

TMLT's failure to assert this argument during the bankruptcy trial potentially caused Markey not to

join any trustee in that proceeding.[14]  Finally, this Court is unable to locate any statutory history to

indicate that the Legislature intended that physician policyholders be denied recovery of any

attorney's fees they expended in successfully prosecuting any breach of contract actions against

TMLT.[15]  TMLT's objection is overruled.

In the alternative, TMLT argues that Markey has failed to adequately support her claim of

$44,700.  The bankruptcy trial was held in October 2003.  Markey has provided an affidavit from

Rutherford.  *See* Motion to Determine Attorney's Fees, Docket No. 16.  However, that affidavit

merely summarizes and substantiates attorney's fees incurred post-bankruptcy trial.  There is no

---

[13]Applying the holding in *Juhl*, the judgment against TMLT in this case is really a judgment against the trustees of TMLT.  *See* 186 S.W.3d at 570.  Since TMLT has not identified its trustees and has not indicated whether those trustees are "individuals" for purposes of section 38.001, this Court finds that section 38.001 applies to the trustees of TMLT.

[14]*Juhl* held that failure to raise a timely objection to capacity waives any objection that judgment must be rendered against the trustee.  It would be strange to think that failure to raise a timely objection to capacity results in the waiver of a rather insignificant right (a judgment against a trust must be rendered against the trustee) and the simultaneous gain of an extremely important right (a trust, sued in its own name, does not have to pay attorney's fees on a breach of contract / insurance claim).

[15]In Tex. Ins. Code Art. 21.49-4(e), the Texas legislature clearly and unequivocally exempted self-insured medical liability trusts from other provisions of the insurance code.  The Court refuses to further exempt TMLT from liability for attorney's fees under section 38.001 when the Texas legislature and Texas courts have not directly addressed the issue.

breakdown of time entries prior to that time.  Indeed, on May 8, 2006, this Court specifically instructed Markey's counsel to provide an affidavit that complied with Local Rule CV-7.  Despite that instruction the only reference to bankruptcy trial fees states: "Attorney's fees trial: Tyler $37,500 [and] Dan $7,200."  *See* Docket No. 16, Exhibit 3.

After another hearing in this case held on October 10, 2006, this Court again requested that Markey's counsel provide citation to any other reference that may have been made during the bankruptcy trial that could provide evidentiary support for their fee request.  In response Markey's counsel provided four transcript pages from the bankruptcy trial.  Those excerpts reflect that Tyler Rutherford testified that he expended "91 hours of the other non-documentary-type activity, and then 159 hours of the other.  And I total that up it and that comes to 250 hours that I've expended, and I multiply that times my reasonable rate of $150 an hour and I arrive at $37,500."  As to costs, Tyler Rutherford testified that "the deposition of Mr. Fields was— had to be at least $300.  The deposition and the videotape of Susan Sweet had to be at least $300.  This is a two box file, so I would say there's at least 200 copies generated."  As to the participation of Dan Rutherford, Tyler testified that Dan spent time "consulting in this case and shepherding my activities in this case."  Dan also attended a deposition and the mediation.  Tyler testified that he "conservatively estimated Dan's time at 36 hours and that his rate was $200 an hour for a total of $7,200."

Despite numerous opportunities extended to Markey to provide time records, affidavits or other support for her attorney's fee, the above is simply insufficient to support her claim of $44,700.  The Court will take judicial notice that the bankruptcy trial was a two-day proceeding and will also award an additional 8 hours preparation time.  Accordingly, Tyler is awarded 24 hours at a rate of $150 per hour and Dan is awarded 24 hours at a rate of $200 per hour.  Accordingly, attorney fees

for the bankruptcy proceedings total $8,400.

**C.      Attorney's fees for appealing the bankruptcy decision to both this court and the Fifth Circuit**

TMLT also asserts that Tex. Civ. Prac. & Rem. Code Section 38.001 and Tex. Ins. Code Article 21.49-4 preclude any award of attorney's fees incurred during the appeal of the bankruptcy decision to both this court and the Fifth Circuit.  For the reasons stated above, this objection is overruled.

As noted above, Markey's counsel did submit an affidavit and time entry breakdown for attorney's fees incurred for appealing the bankruptcy decision to both this court and the Fifth Circuit. In reviewing the time entries, this court finds that some of the requested fees are reasonable. Evidently on February 13, 2004, Markey's counsel wrote the Chief Judge of the Western District complaining that the preparation fees the Clerk charged were excessive.  Markey's counsel seeks fees for reviewing a standard memorandum on October 14, 2004 regarding the voice information system.  There is a request for $200 in attorney time to file the appeal in district court on December 8, 2004 .  In addition, Markey's counsel seeks reimbursement for 42.75 hours for preparing, researching and finalizing a twelve page brief.[16]  There are a number of instances were excessive time is requested for reviewing correspondence and attending to telephone calls.[17]  There is a request for 4.5 hours of legal research expended on February 22, 2006 with no further specificity as to what issues were researched.  Finally, there is a request for attorney's fees for two counsel who appeared

---

[16]This figure does not include 31 hours incurred in reviewing the trial transcript and research.

[17]October 21, 2005; October 25, 2005; November 2, 2005; January 23, 2006; February 6, 2006; February 22, 2006; April 27, 2006.

at a May 8, 2006 status conference.  TMLT argues that Markey has failed to adequately support her claim for attorney's fees.  This objection is sustained in part, and overruled in part.  After thoroughly reviewing the time entries submitted, the court finds that 142.5 hours were reasonably and necessarily expended at counsel's rate of $200 per hour for a total of $28,500.  In addition, filing fees to the district court of $255 were reasonably incurred.

**D.**     **Prejudgment interest rate to be applied**

As stated above, this court has concluded that the underlying damages, court costs and attorney's fees expended in settling the Muzquiz matter was $44,493.  The exact dates that these expenses were paid for by Markey are not clearly identified in the record.  It can be ascertained, however, from the affidavit of attorney Kerr and the attached invoices that all of these expenses had been paid by at least September 30, 1999.[18]  Accordingly, the court concludes that prejudgment interest will be calculated from this date.  Since the underlying TMLT insurance policy does not provide for any interest rate, Tex. Finance Code section 304.003 applies.  An 8.25% prejudgment simple interest rate is to be applied.

### III.  Conclusion

This court concludes that the underlying damages, court costs and attorney's fees expended in settling the Muzquiz matter was $44,493.  Attorney fees for the bankruptcy proceedings total $8,400.  Further, attorney's fees for appealing the bankruptcy decision to both this court and the Fifth Circuit total $28,500.  In addition, filing fees to the district court of $255 were reasonably incurred.  An 8.25% prejudgment interest rate will apply running from September 30, 1999.  The Clerk is

---

[18]Markey attempts to recover prejudgment interest from August 8, 1997, the date she allegedly made a demand upon TMLT to defend her in the Muzquiz lawsuit.  However, Markey offers no evidence that she actually sustained any monetary losses at that point in time.

instructed to close this case.

It is so ORDERED.

SIGNED this 1st day of November, 2006.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE